# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| LOGISTICS BUDDY TRANSPORTATION, LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>VS CARRIERS, INC., )<br>)<br>)<br>Defendant. ) | No. 2:18-cv-02006-TLP-tmp |

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Logistics Buddy Transportation, LLC ("Logistics Buddy") moves for summary judgment against VS Carriers, Inc. ("VS") on a Carmack Amendment claim of carrier liability for an undelivered shipment of fresh beef. (ECF No. 59 at PageID 271.) Plaintiff alleges that Defendant failed to deliver a shipment of fresh meat and that it may end this beef with judgment in its favor. The Court agrees so the Motion is GRANTED.

## BACKGROUND

### I. Procedural History

Plaintiff's suit originated as a claim by Monogram Food Solutions, LLC ("Monogram") against broker Re Transportation, Inc. ("ReTrans") for the invoice value of an undelivered shipment of beef. (ECF No. 1 at PageID 4.) ReTrans sued seeking indemnification from carrier liability from Logistics Buddy for the freight loss. (*Id.*) Logistics Buddy then cross claimed and impleaded VS as a third-party defendant, because

Logistics Buddy subcontracted the delivery of the beef to VS. (ECF No. 59-3 at PageID 290.) ReTrans and Logistics Buddy settled their claims for $116,381, and ReTrans assigned the rights to the claim for the undelivered beef shipment to Logistics Buddy. (ECF Nos. 45 at PageID 216; 45-4 at PageID 236.) Logistics Buddy amended its complaint against VS for carrier liability under the Carmack Amendment, and, following a period of discovery, now moves for summary judgment. (ECF Nos. 45 at PageID 213; 59 at PageID 271.)

## II. Statement of Undisputed Facts

The Court takes these facts from Logistics Buddy's Statement of Undisputed Material Facts (ECF No. 59-2 at PageID 282), VS's Response to Statement of Undisputed Material Facts and Statement of Additional Facts Pursuant to LR 56.1(b)(3) (ECF No. 61 at PageID 395), and Logistics Buddy's Response to Additional Undisputed Material Facts (ECF No. 63 at PageID 448.)

ReTrans arranged for Logistics Buddy to transport the shipment of fresh beef from Chicago Meat Authority, Inc. ("CMA") in Chicago, Illinois to Monogram in Martinsville, Virginia. (ECF No. 59-2 at PageID 282.) Monogram was the beneficial owner of the beef shipment. (*Id.* at 283.) The shipment of fresh beef was perishable—so the transportation company needed to keep it at twenty-eight degrees. (ECF Nos. 59-2 at PageID 283; 45-2 at PageID 224.) And this shipment required expedient delivery. (*Id.*) CMA ships fresh beef to the Martinsville Monogram facility often, and the typical transit time for a shipment is two days. (ECF Nos. 59-2 at PageID 283; 59-4 at PageID 301.) Logistics Buddy could not transport the beef, so it used its brokerage affiliate to arrange for VS to deliver it. (*Id.* at PageID 282.)

The dates are important here. VS driver, Desmond Brown, accepted the shipment from CMA in Chicago on February 10, 2017, with the delivery appointment in Martinsville scheduled for February 13, 2017. (ECF Nos. 59-2 at PageID 283; 59-3 at PageID 290.) CMA maintained the beef at the proper temperature during processing and storage, and when it tendered the shipment to the VS driver, the beef was unadulterated and suitable for human consumption. (ECF Nos. 59-2 at PageID 283; 59-4 at PageID 300.) The VS driver's signature by the seal on the bill of lading reveals that they loaded and sealed the shipment in the driver's presence. (ECF Nos. 45-2 at PageID 244; 59-2 at PageID 283; 59-4 at PageID 300.) And the driver did not make any notes or exceptions on the bill of lading. (*Id.*)

Despite the need for expedient delivery, VS did not deliver the shipment on time. (ECF No. 61 at PageID 400.) Logistics Buddy contacted the VS driver to get updates on the shipment and delivery after the driver missed the delivery appointment. (ECF Nos. 60-2 at PageID 385-94; 60-1 at PageID 371-73.) The parties did not resolve the shipment issues and the meat went undelivered until three days after the delivery appointment. (ECF Nos. 59-2 at PageID 284; 59-3 at PageID 288.) That is when Monogram rejected the shipment. (*Id.*)

Because of VS's lack of log records and other documentation, the parties could not determine conclusively the progress of the shipment, the precise cause of the delays, the maintenance record of the tractor and trailer used for the shipment, or temperature records from the refrigerated trailer. (ECF No. 59-2 at PageID 284.) HBL Meats did salvage the shipment. (ECF 59-5 at PageID 320.) The only record related to the shipment's salvage is a check from Illinois-based HBL Meats Inc. to Monogram. (ECF No. 61 at PageID 403; 61-3 at PageID 442.) The invoice value of the beef shipment is $126,026.99. (ECF No. 59-3 at PageID 296.) Logistics Buddy seeks indemnification from VS for the $116,381 that Logistics

Buddy paid to ReTrans, plus costs and fees stemming from this litigation[1]. (*Id.* at PageID at 177.)

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense." *Bruederle v. Louisville Metro Gov't*, 687 F.3d 771, 776 (6th Cir. 2012) (internal quotation marks omitted). "The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact." *Mosholder v. Barnhardt*, 679 F.3d 443, 448 (6th Cir. 2012) (citing *Celotex Corp v. Catrett,* 477 U.S. 317, 323 (1986)). "Mere conclusory and unsupported allegations, rooted in speculation, do not meet [the] burden." *Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003). "Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." *Mosholder*, 679 F.3d at 448–49 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The non-moving party "may not rest upon its mere allegations." *Great West Cas. Co. v. Flandrich*, 605 F.Supp 2d 955, 960 (S.D. Ohio 2009). The non-moving party "must produce evidence that results in a conflict of material fact to be resolved by a jury[,]" and the

---

[1] More precisely, Great West Casualty Company ("GWCC") paid to settle that claim on behalf of Logistics Buddy. So GWCC is now subrogated to the interests of Logistics Buddy for this dispute. Since Logistics Buddy filed for Chapter 11 bankruptcy protection in the District of South Dakota (Case No. 19-40294), GWCC moved that Bankruptcy Court to lift the stay and allow it to proceed here. The Bankruptcy Court granted that motion. (*See* ECF 71-1 at PageID 502.)

Court "must afford all reasonable inferences, and construe the evidence, in the light most favorable to the non-moving party." *Cox v. Ky. Dept of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). Rather, [t]he non-moving party must present 'significant probative evidence' to show that there is more than 'some metaphysical doubt as to the material facts.'" *Id.* (quoting *Moore v. Philip Morris Co.*, 8 F.3d 335, 339–40 (6th Cir. 1993). "When the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper." *Chapman v. UAW Local 1005*, 670 F.3d 677, 680 (6th Cir. 2012) (citing *Celotex Corp.*, 477 U.S. at 323).

## **ANALYSIS**

Federal law controls the allocation of liability to a carrier for damage to an interstate shipment. *Mo. Pac. R.R. Co. v. Elmore & Stahl*, 377 U.S. 134, 137 (1964). The Carmack Amendment to the Interstate Commerce Act "makes carriers liable for the full actual loss, damage, or injury caused by them to the property they transport" and "codifies the common-law rule that a carrier, though not an absolute insurer, is liable for damage to goods transported by it." *Id.* The Interstate Commerce Act "preempt(s) state and common law actions relating to the shipment of goods by interstate carriers." *Toledo Ticket Co. v. Roadway Exp., In*c., 133 F.3d 439, 441 (6th Cir. 1998).

Carmack indemnification is available under 49 U.S.C. § 14706(b), entitling a carrier who issues the receipt or bill of lading to recover from another carrier "over whose line or route the loss or injury occurred the amount required to be paid to the owners of the property." 49 U.S.C. § 14706(b). The carrier can then show the amount of the loss "by a receipt, judgment, or transcript, and the amount of its expenses reasonably incurred in defending a

5

civil action brought by that person." *Id.* Indemnification allows the beneficial owner of the shipment to recover from the initial carrier without "seek[ing] out the carrier actually at fault, nor must the plaintiff-shipper determine the circumstances by which the loss or damage actually occurred." *CNA Ins. Co. v. Hyundai Merch. Marine Co.*, 747 F.3d 339, 353 (6th Cir. 2014).

The shipper prevails if they can meet a "very low threshold" of establishing a "prima facie case with a showing of three basic elements: (1) that the initial ("receiving") carrier received the cargo in good condition, (2) that the cargo was lost or damaged, and (3) the amount of actual loss or damages." *Id.* (citing *Mo. Pac. R.R. Co.*, 377 U.S. at 138).

### I. Carrier Received the Cargo in Good Condition

To satisfy the first element of their Carmack claim, Logistics Buddy must show that VS received the shipment in good condition. *Id.* The record shows that VS driver Desmond Brown picked up the shipment on the requested date. (ECF Nos. 59-2 at PageID 283; 59-3 at PageID 290.) The VS dispatcher testified that "[a]s far as we know, when [the driver] picked up the load, there was no damage . . . [w]e did not get any notification from the driver or from anyone else that there was something wrong with the product." (ECF No. 59-5 at PageID 313.) And CMA's Charlie Kiolbasa testified that CMA properly maintained the shipment had at its facility before shipping, and that the beef was unadulterated and suitable for human consumption when VS accepted the shipment. (ECF Nos. 59-2 at PageID 283; 59-4 at PageID 300.)

And the "shipper's burden of proving that the goods were delivered to the carrier in good condition may be satisfied by the proffer of a clean bill of lading for the shipment, provided that the cargo was packaged in a way that permitted its inspection by the carrier."

*Travelers Indemnity Co. as Subrogee of Quest Air Parts, Inc. v. Worrell Express, LLC*, No. 13-2201, 2014 WL 12531116, *4 (W.D. Tenn. 2014) (quoting *Sec. Ins. Co. v. Old Dominion Freight Line, Inc.*, 391 F;.3d 77, 83 (2d Cir. 2004)). CMA testified that the VS driver signed the bill of lading reflecting that they applied a seal. (ECF No. 59-4 at PageID 300.) The driver's signature by the seal means that it was a live load and that Brown was present at the loading and sealing of the shipment and that he had a chance to inspect it. (*Id.*) When the VS driver signed the bill of lading, he did not make any notes or exceptions on it. (ECF No. 45-2 at PageID 244.) So the Court can infer the shipment was in good condition because the VS driver accepted the shipment with the bill of lading. *See Great West Cas. Co. v. Flandrich*, 605 F.Supp 955, 966 (S.D. Ohio 2009) (finding that the carrier's signature on the bill of lading attests to delivery to the carrier in good condition).

VS argues that Logistics Buddy fails to make a showing as to the first element because the CMA did not know the name of VS's driver and Logistics Buddy asked the driver to check in at CMA as "Logistics Buddy Transportation." (ECF No. 60 at PageID 356–57.) This argument does not square with the undisputed facts that "VS accepted the [s]hipment for transport" and that "VS'[s] driver Desmond Brown signed the bill of lading for the [s]hipment." (ECF No. 61 at PageID 397.) Logistics Buddy has satisfied the first element of its prima facie case by showing that the shipment was in good condition when VS received it from CMA.

## II.     Lost or Damaged Cargo

As to the second element of cargo loss or damage, the parties do not dispute that the shipment did not arrive at Monogram on the date set forth by the rate sheet, February 13, 2017. (ECF Nos. 61 at PageID 400; 59-2 at PageID 290.) When VS still had not completed

the delivery on the morning of February 16, 2017, Monogram rejected delivery of the shipment. (ECF Nos. 59-3 at PageID 288; 59-2 at PageID 284.) Logistics Buddy then notified the driver that Monogram would reject the shipment on the morning of February 16th, shortly after telling the driver that "they are freaking out and blowing up my phone" because he had not delivered the shipment yet. (ECF Nos. 60-2 at PageID 385–86.) The record shows that VS and Logistics Buddy engaged in good-faith discussions about delivering the shipment after the delivery appointment until enough time passed that Monogram decided to reject the delivery. (ECF Nos. 60-2 at PageID 385–94; 60-1 at PageID 371–73.) The deposition testimony of VS employee Archil Sharashidze establishes that VS understood that Monogram rejected the delivery because of concerns that the product was past its shelf life by February 16, 2017. (ECF No. 59-5 at PageID 315.)

And when Monogram sought carrier liability for the shipment from ReTrans, Monogram told ReTrans that delivery of the shipment three days late would violate Monogram's food safety standards because the meat would have been more than fifteen days past the kill date. (ECF No. 59-3 at PageID 292.) Monogram considered the shipment damaged on February 16, 2017. VS asserts that the shipment remained at the proper temperature and was therefore undamaged throughout the delivery delays. (ECF No. 61 at PageID 398.) Even so, the temperature of the shipment in transit is immaterial because Monogram rejected the late shipment with no apparent inquiry into the transit temperature. Because the parties do not dispute that VS did not deliver the shipment on the date due and that Monogram cancelled the delivery appointment three days after the due date, Logistics Buddy has satisfied the second element of their claim by establishing that VS lost the shipment, and, for Monogram's purposes, damaged.

## III. Proof of Damages

The final element of Logistics Buddy's prima facie case is proof of the damages amount. "[T]he default posture of the Carmack Amendment is full liability on the carrier." *Exel, Inc. v. Southern Refrigerated Transport, Inc.* 807 F.3d 140, 150 (6th Cir. 2015) (quotation omitted). The invoice value of the beef shipment is $126,026.99. (ECF No. 59-3 at PageID 296.) Logistics Buddy settled ReTrans' Carmack claim for $116,381. So that is the amount requested from VS as indemnification. (ECF Nos. 61 at PageID 406; 59-3 at PageID 288, 44 at PageID 211.)

Since Logistics Buddy established its prima facie case under the Carmack Amendment, the burden of proof shifts to the VS to avoid liability. *Worrell*, 2014 WL 12531116, at *6. VS must "show both that it was free from negligence and that the damage to the cargo was due to one of the excepted causes." *Plough, Inc. v. Mason and Dixon Lines*, 630 F.2d 468, 470 (6th Cir. 1980) (quoting *Mo. Pac. R.R. Co.*, 377 U.S. at 137). The five excepted causes of damage relieving the carrier of liability are "(a) the act of God; (b) the public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or nature of the goods." *Id.* "Negligence need not be proved in actions brought under [49 U.S.C. § 14706]. It is assumed, thereby placing upon the carrier the burden of showing that the loss was not caused by its negligence . . . ." *United States v. Cent. of Georgia Ry. Co.*, 411 F. Supp. 1023, 1027 (E.D. Tenn. 1976). That is, the carrier's non-delivery of goods creates a presumption of negligence. *See Plough*, 630 F.2d at 470 ("[T]he carrier's delivery of damaged goods which were in good condition when it received them created a presumption of negligence, not a mere inference.")

For its part, VS argues that it is free from negligence and that the shipper caused the delay. (ECF No. 60 at PageID 360.) VS contends that Logistics Buddy's conduct caused the delays because Logistics Buddy did not demand that VS make alternative arrangements for the delivery and that the "friendly" correspondence between the VS driver and the Logistics Buddy representative induced VS not to make alternate arrangements for the timely delivery of the shipment. (ECF No. 61 at PageID 407.) The Court finds this argument unpersuasive.

First, VS had a duty to deliver the shipment undamaged, and the law presumes negligence if the carrier does not fulfill that duty. VS has not shown a lack of negligence to rebut this presumption. Second, the correspondence between Logistics Buddy and the VS driver is cordial but not as lax as described by VS. (ECF Nos. 60 at PageID 360; 60-2 at PageID 385–94.) Logistics Buddy told the VS driver that Monogram had to shut down operations because the driver did not deliver the meat in time, pushed for delivery time commitments from the driver repeatedly, and notified the driver that Monogram needed to make special staffing arrangements to receive this delivery when the operations were closed. (*Id.*) While the Logistics Buddy correspondence was friendly, it conveyed enough the urgency of the shipment and the hardship to Monogram. The record does not support VS's assertion that Logistics Buddy caused the delay and overcome the presumption of VS's negligence.

And so VS may not avoid liability for the undelivered meat shipment. Since Logistics Buddy paid Re Trans over $116,000, it seeks that amount from VS. That said, the contract with VS limited its liability for this shipment to $100,000. (ECF No. 16-3 at PageID 48.) A carrier must meet four requirements to limit its liability under the Carmack Amendment. *See Toledo Ticket v. Roadway Express, Inc.*, 133 F.3d 439, 441–42 (6th Cir. 1998) (the carrier

must "(1) maintain approved tariff rates with the ICC; (2) give the shipper a fair opportunity to choose between two or more levels of liability; (3) obtain the shipper's written agreement as to his choice of liability; and (4) issue a receipt or bill of lading prior to moving the shipment."); 49 U.S.C.A. § 13501(1)(E). Whether the contract with VS limits its liability here remains an open question. The Court will thus require the parties to file briefs on this issue.

## **CONCLUSION**

For these reasons, Plaintiff's Motion for Summary Judgment is GRANTED in its entirety. The Court will decide the amount of damages owed after the parties fully brief that issue.

**SO ORDERED**, this 19th day of August, 2019.

                                          s/Thomas L. Parker
                                          THOMAS L. PARKER
                                          UNITED STATES DISTRICT JUDGE